# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BRANDI HOLLAND,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.:  2:20-cv-02032-ACA |
| } | |
| **COMISSIONER,** } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRTAION,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Brandi Holland appeals the decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

**I.   PROCEDURAL HISTORY**

Ms. Holland applied for a period of disability and disability insurance benefits in August 2019, alleging disability beginning April 10, 2019. (R. at 94, 183–184). The Commissioner initially denied Ms. Holland's claim (*id.* at 112–117), and Ms. Holland requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 128–129). After holding a hearing (r. at 35–68), the ALJ issued an unfavorable

decision (*id.* at 16–34). The Appeals Council denied Ms. Holland's request for review (*id.* at 1–6), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks

omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Holland had not engaged in substantial gainful activity since her April 10, 2019 alleged onset date. (R. at 21). The ALJ found that Ms. Holland's asthma, post-tussive syndrome, and obesity were severe impairments but that her history of pulmonary embolism, history of deep venous thrombosis, restless leg syndrome, depression, and attention deficit disorder were non-severe impairments. (*Id.* at 21–22). The ALJ then concluded that Ms. Holland does not suffer from an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (R. at 24).

After considering the evidence of the record, the ALJ determined that Ms. Holland has the residual functional capacity to perform a reduced range of sedentary work activities as defined in 20 C.F.R. § 404.1567(a).  (*Id.* at 24).  Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Holland is capable of performing her past relevant work as a paralegal, telephone solicitor, and administrative assistant.  (*Id.* at 28).  In addition, the ALJ concluded that other jobs exist in significant numbers in the national economy that Ms. Holland could perform, including addresser, document preparer, and surveillance system monitor.  (R. at 29).  Accordingly, the ALJ determined that Ms. Holland had not been under a disability, as defined in the Social Security Act, from her alleged April 10, 2019 onset date through the date of the decision.  (*Id.* at 30).

## IV.   DISCUSSION

Ms. Holland argues that the court should reverse and remand the Commissioner's decision for three reasons: (1) the ALJ erred in evaluating the opinion of treating physician Dr. Christina Nadar; (2) the ALJ erred in relying on vocational expert testimony in response to questions that did not comprise all of Ms. Holland's limitations; and (3) the ALJ erred by failing to properly consider whether

Ms. Holland's impairments meet or equal Listing 3.02 and Listing 3.03. (Doc. 10 at 20). The court considers each issue in turn.

### 1. Dr. Nadar's Opinion

Ms. Holland's first argument is that the ALJ did not properly evaluate the opinion of her treating physician, Dr. Nadar. (Doc. 10 at 9–16).

The regulations governing how the Commissioner evaluates medical opinions changed for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Ms. Holland filed her application for benefits in August 2019, the Commissioner argues that the new regulations apply to the ALJ's consideration of Ms. Holland's claims. (Doc. 12 at 8). Ms. Holland does not appear to challenge the applicability of the new regulations to the ALJ's review of Dr. Nadar's opinion, but she argues that under those regulations, the ALJ should have found Dr. Nadar's opinion persuasive. (*See* Doc. 10 at 9–11). However, citing Eleventh Circuit precedent that pre-dates the regulations, she also argues that the ALJ did not articulate adequate reasons for not giving Dr. Nadar's opinion great weight under the Circuit's treating physician rule. (*Id.* at 11). The court need not resolve any dispute regarding which standard applies to the evaluation of Dr. Nadar's opinion because under either framework, the ALJ's decision is supported by substantial evidence.

Under the revised regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s). . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* at § 404.1520c(c). Supportability and consistency are the most important factors, and therefore, the ALJ must explain how she considered those factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, explain how she considered the other factors. 20 C.F.R. § 404.1520c(b)(2).

The Eleventh Circuit's treating physician rule requires that an ALJ give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. at 1240–41.

In December 2019, Dr. Nadar submitted an opinion in support of Ms. Holland's disability application. (R. at 518). Dr. Nadar opined that Ms. Holland's cough induced syncope would cause a number of limitations. For example, Dr. Nadar stated that Ms. Holland "cannot work a job that she has to drive to, or that may put her or someone else at risk if she loses consciousness." (*Id.*). Dr. Nadar opined that Ms. Holland would miss more than three days of work each month. (*Id.* at 519). She also explained that Ms. Holland would experience symptoms, on a chronic basis, that would cause distraction from job tasks or result in failure to complete job tasks in a timely manner, for more than two hours during a typical eight hour workday. (R. at 519).

Dr. Nadar provided a narrative statement explaining the reasons for her opinion. Specifically, Dr. Nadar noted that Ms. Holland's cough included syncope caused her to lose consciousness when she has a coughing spell. (R. at 518). According to Dr. Nadar, Ms. Holland's episodes "seem[] to occur at any time and [are] not very predictable." (*Id.*). Dr. Nadar explained that she was working with Ms. Holland and her other physicians in hopes of minimizing symptoms. (*Id.*). Dr. Nadar expressed concern that Ms. Holland should not drive or perform functions that would put her or someone else in danger. (R. at 518). Dr. Nadar stated that Ms. Holland's current condition "may change hopefully in the future." (*Id.*).

The ALJ found Dr. Nadar's opinion partially persuasive. The ALJ noted that Dr. Nadar had a limited treatment relationship with Ms. Holland because she had treated Ms. Holland for only six months. (R. at 27). The ALJ explained that Dr. Nadar's assessment did not preclude all work, only work that would involve Ms. Holland driving to that location or work that would put Ms. Holland or others at risk if she lost consciousness because of her syncope. (*Id.*). The ALJ also noted that Dr. Nadar stated that she expected Ms. Holland's condition to improve as Dr. Nadar coordinated with Ms. Holland's other physicians. (*Id.*). The ALJ cited medical evidence showing that Ms. Holland reported that she was able to avoid syncopal episodes on occasion if she coughed in a certain position. (R. at 27, citing *id.* at 477). In addition, the ALJ explained that by early 2020, treatment notes showed that Ms. Holland was experiencing "significant improvement" in her episodes. (R. at 27). The medical record the ALJ cited for this finding explains that Ms. Holland was having only three to four episodes a week, that she generally was knocked out for ten to thirty seconds, that she was "a little confused upon waking up," but that she returned to normal within a minute. (*Id.* at 531). Moreover, the ALJ noted that Ms. Holland's neurologist believed that outside temperature and heavy eating exacerbated her episodes. (R. at 27, citing *id.* at 531).

This explanation satisfies the ALJ's regulatory obligation, *see* 20 C.F.R. § 4040.1520c(c)(1)-(2), and establishes good cause for not giving great weight to Dr.

Nadar's opinion under applicable Eleventh Circuit precedent, *see Crawford*, 363 F.3d at 1159–61.

Ms. Holland argues that other evidence in the record supports and is consistent with Dr. Nadar's opinion. (Doc. 10 at 12–15). This argument asks the court to impermissibly "decide facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the" Commissioner. *Winschel*, 631 F.3d at 1178 (quotation marks omitted); *see also Crawford*, 363 F.3d at 1158–59 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (quotation marks omitted). Accordingly, the court will not disturb the ALJ's articulated findings concerning Dr. Nadar's opinion.

Ms. Holland also argues that the ALJ mischaracterizes Dr. Nadar's driving restriction as not prohibiting all driving. (Doc. 10 at 15). As an initial matter, it is unclear whether a statement about a claimant's ability to drive constitutes a medical opinion. Under the regulations, a medical opinion is "a statement from a medical source about what" a claimant can "still do despite her impairment(s)" or whether a claimant has limitations or restrictions in her ability to perform various physical or mental demands of work or in her ability to adapt to environmental conditions. *See* 20 C.F.R. § 404.1513(a)(2). But even if Dr. Nadar's driving restriction constituted a medical opinion, as explained in greater detail below, *see infra* pp. 10–11, Ms.

9

Holland has not shown that any of the jobs that the ALJ found she could perform require driving. Therefore, she has not shown how any improper evaluation of that opinion impacted her disability claim.

    2.    <u>Vocational Expert Hypothetical</u>

Ms. Holland's second argument is that that the ALJ's decision is not supported by substantial evidence because the ALJ relied on vocational expert testimony that was not based on a correct or full statement of her limitations and impairments. (Doc. 10 at 16–18). "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Ms. Holland claims that the ALJ relied on testimony from the vocational expert based on an incomplete hypothetical because the hypothetical did not include limitations identified by Dr. Nadar. Specifically, Ms. Holland claims that the ALJ was required to include in her hypothetical the following limitations: no driving, remaining at home with someone to watch her; and missing more than three days of work a month. (Doc. 10 at 16–18). However, an ALJ is not required to include limitations in a hypothetical that are unsupported by the record. *Crawford*, 363 F.3d 1161.

With respect to Dr. Nadar's suggestion that Ms. Holland should not drive, the Commissioner argues that the ALJ accounted for that limitation in her hypothetical

by stating that Ms. Holland should not be exposed to dangerous machinery or hazards.  (Doc. 12 at 15; citing r. at 24; *see also* r. at 27, 62).  The court questions whether that hypothetical adequately addresses any driving restriction.  *See Jones v. Commissioner of Social Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) ("Contrary to the Commissioner's argument on appeal, the limitation on being exposed to moving machinery does not necessarily encompass Jones's driving restriction.").  However, any oversight in this regard is harmless.  First, Ms. Holland's attorney asked the vocational expert a series of hypothetical questions during the administrative hearing but did not ask about any driving restriction, and there is no testimony from the vocational expert about how a driving restriction would impact employment.  Second, Ms. Holland has not argued that any functional requirements of her past relevant work or the other jobs identified by the vocational expert that Ms. Holland could perform require driving.  Accordingly, if the ALJ erred in failing to include a driving limitation in her hypothetical, Ms. Holland has not shown how the error impacted her case.

With respect to Dr. Nadar's suggestion that Ms. Holland remain at home with someone, the court finds that this is not a functional limitation but rather a recommendation upon discharge from a particular appointment based on Ms. Holland's symptoms at that time.  (R. at 337).  When Ms. Holland saw Dr. Nadar in July 2019, Ms. Holland had recently been in the restroom when she started coughing

11

and fell down head-first. (R. at 334). Even still, Ms. Holland reported that her syncopal episodes were brief (lasting no more than five minutes), and she told Dr. Nadar that her pulmonologist thought that her condition "likely [] would improve in a few weeks." (*Id.*). Dr. Nadar also stated that she expected Ms. Holland's condition to improve as Ms. Holland began treatment to address underlying conditions that caused her to cough. (R. at 337). At the end of the visit, Dr. Nadar stated advised Ms. Holland to "stay home and with someone if possible" based on her "current symptoms and syncopal episodes." (*Id.*).

Ms. Holland has cited no authority for the proposition that a doctor's recommendation at the conclusion of one examination that a patient stay home "with someone if possible" bears on the patient's ultimate ability to perform job related functions. In addition, the context of Dr. Nadar's recommendation that Ms. Holland stay home with someone indicates that the suggestion was temporary in nature as the treatment note from that visit indicates that both Dr. Nadar and Ms. Holland's pulmonologist believed that Ms. Holland's episodes were likely to improve. (R. at 334, 337). And Dr. Nadar's December 2019 assessment likewise suggests that she believed Ms. Holland could work and was not required to stay at home on a full-time basis. (*See* R. at 518). Accordingly, the ALJ was not required to include this limitation in her hypothetical.

Finally, as to Dr. Nadar's opinion that Ms. Holland's syncope would require her to miss more than three days of work a month, substantial evidence supports the ALJ's decision to discredit this opinion. Although the ALJ does not explicitly address Dr. Nadar's absenteeism limitation in her decision, by finding Dr. Nadar's opinion only partially persuasive, the ALJ implicitly found that the absenteeism portion of her opinion was not persuasive. And the ALJ's discussion of Dr. Nadar's opinion cites medical evidence that is inconsistent with an opinion that Ms. Holland would miss more than three days of work per month as that evidence reflects that Ms. Holland's syncopal episodes were significantly limited in nature and duration. (R. at 27).

For example, as Ms. Holland's syncopal episodes improved in early 2020, she was experiencing them only three to four times a week. (R. at 531). And when they occurred, they would usually knock her out for ten to thirty seconds. (*Id.*). Although she reported that she remained tired, she would wake up and return to normal within a minute. (*Id.*). In addition, she also reported that she was generally able to find a chair in time when she felt she was about to experience an episode. (R. at 528). Even if other evidence in the record preponderates against the ALJ's rejection of Dr. Nadar's absenteeism opinion, the court cannot reweigh the evidence, and the court concludes that substantial evidence supports the ALJ's consideration of Dr. Nadar's opinion that Ms. Holland would miss more than three days of work per month. *See*

13

*Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) ("Substantial evidence is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").

Because the limitations that Ms. Holland argues the ALJ erroneously failed to include in her hypothetical were either not supported by the record or because any mistake on the part of the ALJ was harmless, the court finds no reversible error on this issue. *See Crawford*, 363 F.3d at 1161; *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 137 (11th Cir. 2009) ("[I]f additional impairments asserted by a claimant are not supported by substantial evidence, they do not need to be included in a hypothetical.").

    3.    Listings 3.02 and 3.03

Ms. Holland's third argument is that the ALJ erred by finding that she does not meet Listing 3.02 and Listing 3.03. (Doc. 10 at 18–20).

A claimant bears the burden of proving that she meets or equals a listed impairment. *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (quotation marks omitted). "To equal a listing, the medical findings

must be at least equal in severity and duration to the listed findings. " *Wilson*, 284 F.3d at 1224 (quotation marks omitted).

In her decision, the ALJ stated that that she considered all of the listed impairments in 20 C.F.R. Part 404, Appendix 1, but she concluded that "the overall evidence of record does not meet the requirements of any the listed impairments including . . . Listing 3.02 and 3.03 (asthma)." (R. at 24).

Ms. Holland challenges this analysis on two grounds. First, she contends that the ALJ erred by failing to discuss what specific evidence showed that she did not meet the Listings. (Doc. 10 at 19–20). The Eleventh Circuit has held that although an ALJ must consider the Listings in making a disability determination, the ALJ is not required to "mechanically recite the evidence leading to her determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Here, the ALJ made an explicit finding that Ms. Holland's impairments did not meet or medically equal Listing 3.02 and Listing 3.03. The ALJ satisfied her obligation and was not required to articulate additional findings in support of her determination.

Ms. Holland's reliance on *Armstrong v. Comm'r of Soc. Sec.*, 546 F. App'x 891 (11th Cir. 2013), is misplaced. In *Armstrong*, the Eleventh Circuit found that the ALJ committed reversible error because the ALJ's decision did not mention the applicable Listing at all or discuss relevant evidence from which the court could determine that the ALJ had actually considered the applicable Listing. *Id.* at 894–

895. That is not the case here. The ALJ specifically considered the relevant Listings and found that Ms. Holland's impairments do not satisfy the criteria for Listing 3.02 or Listing 3.03. (R. at 24). Therefore, *Armstrong* does not assist Ms. Holland.

Second, Ms. Holland claims that her medical records demonstrate that she meets the Listings.

Listing 3.02 concerns "chronic respiratory disorders due to any cause except" cystic fibrosis. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02. A claimant may show that she meets this Listing in one of four ways: (1) a $FEV_1$ (forced expiratory volume in the first second of a forced expiratory maneuver) less than or equal to a particular value (relevant here, $1.35^1$) based on age, gender, and height without shoes; (2) a FVC (forced vital capacity) less than or equal to a particular value based on age, gender, and heigh without shoes; (3) chronic impairment of gas exchange demonstrated by one of three tests; or (4) exacerbations or complications requiring three hospitalizations within a 12-month period. *Id.* at § 302(A)-(D).

---

[1] The Commissioner claims that based on the table provided in Listing 3.02, the value should be 1.45, which is the figure for a female over the age of 20 who is between 66.5 and 68.49 inches tall. (Doc. 12 at 17, n. 6; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02, Table I—$FEV_1$ Criteria for 3.02A). Ms. Holland claims the value should be 1.35, which is the figure for a female over the age of 20 who is between 62.5 and 66.49 inches tall. (Doc. 10 at 19; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02, Table I—$FEV_1$ Criteria for 3.02A). The court is unclear why the Commissioner suggests that the proper value is based on someone who is 66.5 inches tall. As the Commissioner notes, the day of Ms. Holland's pulmonary function tests, her recorded height is 66 inches tall. (*See* R. at 330, 486). The record contains no evidence that Ms. Holland is 66.5 inches tall or taller. Therefore, the court uses the 1.35 figure.

16

Listing 3.02 concerns asthma. 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.03. A claimant meets this Listing if she has both: (1) a $FEV_1$ less than or equal to a particular value (here, 1.75[2]) based on age, gender, and heigh without shoes, and (2) exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart. *Id.* at § 3.03(A)-(B). 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02, Table I—$FEV_1$ Criteria for 3.02A.

Ms. Holland claims that she meets Listing 3.02 and Listing 3.03 because on September 3, 2019, pulmonary function test results show that she produced a $FEV_1$ value of 1.26, which is less than the values required to satisfy both of the Listings (1.35 for Listing 3.02 and 1.75 for Listing 3.03). (Doc. 10 at 19, citing R. at 330). The Commissioner argues that Ms. Holland's September 3, 2019 $FEV_1$ testing did not meet the regulatory requirements for Listing 3.02 or Listing 3.03 because (1) Ms. Holland was not medically stable at the time of the testing and (2) the September 3, 2019 testing was not valid under the regulations. (Doc. 12 at 19).

---

[2] The Commissioner claims that based on the table provided in Listing 3.03, the value should be 1.85, which is the figure for a female over the age of 20 who is between 66.5 and 68.49 inches tall. (Doc. 12 at 17–18, n. 6; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02, Table VI—$FEV_1$ Criteria for 3.03A). Ms. Holland claims the value should be 1.75, which is the figure for a female over the age of 20 who is between 62.5 and 66.49 inches tall. (Doc. 10 at 19; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 3.02, Table VI—$FEV_1$ Criteria for 3.03A). Again, the record contains no evidence that Ms. Holland was 66.5 inches tall or taller. Ms. Holland was 66 inches tall when doctors performed her pulmonary function tests. *See supra* n. 1. Therefore, the court uses the 1.75 figure.

The Commissioner's first argument is not persuasive. For both listings, the regulations provide that during spirometry testing, the claimant "must be medically stable at the time of the test." 20 C.F.R. Part 404, subpt. P, app. 1, § 3.00(E)(2)(a). A claimant is not medically stable, when, among other things, a claimant is within two weeks of a change in prescribed respiratory medication or when a claimant is experiencing temporary worsening of a chronic respiratory disorder. 20 C.F.R. Part 404, subpt. P, app. 1, §§ 3.00(E)(2)(a)(1), (2). The Commissioner claims that when providers administered the spirometry testing on September 3, 2019, Ms. Holland was not medically stable because Dr. Nadar was still adjusting her medication and because Ms. Holland still had severe pulmonary obstruction. (Doc. 12 at 19, citing R. at 328). The treatment note that the Commissioner cites in support of her position is dated September 18, 2019. (R. at 328). A September 18, 2019 treatment note cannot reflect that Ms. Holland's prescribed respiratory medication had changed within two weeks of September 3, 2019 testing. But even if it could, the September 18, 2019 treatment note contains no indication that Dr. Nadar changed Ms. Holland's respiratory medication during that visit. (*Id.*). Similarly, although the treatment note indicates that Ms. Holland suffered from "severe obstruction," the court questions how a September 18, 2019 treatment note shows that Ms. Holland was experiencing a temporary worsening of any respiratory disorder during the September 3, 2019 testing.

The Commissioner's second argument fairs better. Under the regulations, to be a valid spirometry, if a claimant's $FEV_1$ is less than 70 percent of the claimant's predicted normal value, then a second spirometry after inhalation of a bronchodilator is required, unless it is medically contraindicated. 20 C.F.R. Part 404, subpt. P, app. 1, § 3.00(E)(2)(b). Here, Ms. Holland's September 3, 2019 $FEV_1$ result was 38.65% of her predicted normal value (1.26 out of a 3.26 predicted normal value). (R. at 330). The record contains no evidence that a second spirometry was administered after inhalation of a bronchodilator or that use of a bronchodilator was medically contraindicated. (*See id.*). Accordingly, Ms. Holland's September 3, 2019 $FEV_1$ result is not an acceptable test and cannot show that Ms. Holland meets Listing 3.02 or Listing 3.03. *See* 20 C.F.R. Part 404, subpt. P, app. 1, § 3.00(E)(2)(b).

Ms. Holland points to no other evidence in the record demonstrating that she meets Listing 3.02 or Listing 3.03 (*see* doc. 10 at 19), and the court has not located any such evidence. Therefore, the court finds that the ALJ properly evaluated the evidence and found that Ms. Holland's respiratory impairments do not meet or equal Listing 3.02 or Listing 3.03.

## V. CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Holland's application for a period of disability and disability insurance benefits. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this November 18, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE